## WILLIAM A. THORNTON v. ERNEST H. PEERY.

(Filed July 30, 1898.)

1. PUBLIC LANDS—*Land Department—Decisions of Conclusive.* The land department is a tribunal appointed by congress to hear and determine all questions of fact arising between conflicting claimants to public lands, and, when such questions are finally decided by the officers of that department, the decision is conclusive everywhere else, as regards all questions of fact. Where fraud or imposition has been practiced on the party interested, or the officers of the law, or where these latter have clearly mistaken the law applicable to the facts, courts or equity may grant relief; but they are not authorized to re-examine into a mere question of fact, dependent on conflicting evidence, and to review the weight which those officers attached to such evidence.

2. LAND OFFICE—*Contest—Equity Will Interfere, When.* Equity will interfere whenever it is clear that the land officers have, by mistake of the law, given to one man the land which, on the undisputed facts, belonged to another.

3. SAME—*Fraud.* It is only when fraud, imposition, or perjury has prevented the unsuccessful party from fully prosecuting his case, or the officers from fully considering it, that a court of equity will re-examine and pass upon the questions of fact. It is not enough that fraud and imposition have been practiced on the department. It must appear that they affected its determination, which otherwise would have been in his favor. There can be no imposition where both parties have had a full and free opportunity to be heard, with knowledge of the acts constituting the alleged fraud, perjury, or imposition.

4. SAME—*Petition—What Must be Alleged.* An allegation in the petition that the prevailing party in the land office introduced certain false and perjured testimony will not authorize the court to set aside the findings of the officers of the land department, unless such averment is supplemented by the further allegations that there was no other evidence introduced in the contest case tending to support the findings of the land department, or on which such findings could have been based.

5. EQUITY JURISDICTION—*Land Office Decision.* In order to warrant a court of equity in setting aside the findings and conclusions of the officers of the land department on the ground that such officers were influenced by false and perjured testimony, it must be made to clearly appear that the decision of such officers was controlled by, and based upon, such false and perjured testimony and that there was not other testimony in the cause tending to support such findings and conclusions.

6. SAME—*Misapplication of Law.* A court of equity will not inquire into any question of a misapplication of law by the officers of the land department to a controverted question of fact before them, unless the findings of fact and conclusions of such officers are set out fully in the pleading of the complaining party.

7. HARMLESS ERROR.     Errors in rejecting evidence will not be permitted to reverse a judgment where it appears that, if all the evidence offered by the appellant had been received, the judgment must have been the same.
    (Syllabus by the Court.)

*Error from the District Court of Cleveland County; before J. R. Keaton, District Judge.*

*Amos Green & Son,* for plaintiff in error.

*Lewis & Snyder* and *Newell & Jackson,* for defendant in error.

Petition by William A. Thornton against Ernest H. Peery. There was a judgment for defendant and plaintiff appeals. Affirmed.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error, Thornton, made homestead entry of a tract of public land situate in Cleveland county, and settled and made some improvements thereon. The defendant in error, Peery, filed a contest against Thornton's entry, alleging abandonment for more than six months. The contest was tried in the local land office, and the testimony of several witnesses taken and reduced to writing. The register and receiver, after consideration of all the testimony, decided the contest in favor of Peery, and against Thornton, and held his homestead entry for cancellation. From this decision successive appeals were taken to the commissioner of the general land office and the secretary of the interior, before each of which officers the decision of the register and receiver was affirmed, and Thornton's entry was finally canceled, and Peery made homestead entry of the land. Thornton remained in possession of a portion of the land until he was dispossessed by an order of the court in an action of mandatory injunction. Afterwards Peery made final proof, and was awarded the receiver's final certificate, and patent issued. Thornton filed his petition in the district court of Cleveland county against Peery, in which he averred the foregoing facts, and sought to have a resulting trust declared in his favor, and to have Peery declared a trustee holding the legal title for him.

The grounds set forth in the petition upon which he relies to establish a resulting trust are that the contest-

ant, Peery, on the trial of the contest before the local land office, procured two witnesses to testify falsely in reference to the residence of Thornton during the time embraced in the alleged abandonment, and it is averred that they did each testify falsely in certain particulars, and that the decision adverse to Thornton was based upon said false testimony. All the evidence taken in the contest is produced and attached to the petition as an exhibit. It is further alleged that the facts proven by this evidence do not constitute abandonment as a matter of law, and that, by reason of ignorance of the law in the officers of the land department, the law was misconstrued and misapplied, and Thornton's homestead entry wrongfully and illegally canceled, and that he is entitled to have the legal title conveyed to him. A number of other averments are contained in the petition, but none of them are necessary or material except the ones mentioned. To this petition the defendant, Peery, filed a denial, except as to certain allegations specifically admitted. The allegations admitted were that Peey had the legal title to the land; that the contest had been had and decided in his favor; and that Thornton had been ousted by the mandatory injunction proceedings.

The cause went to trial before a jury, and the plaintiff, Thornton, offered evidence to prove the residence and whereabouts of Thornton during the period covered by the alleged abandonment. Objection was made to this testimony and sustained by the court. Then, for the purpose of proving the falsity of the testimony of the two witnesses named in the petition, the evidence taken in the land office was read, after which plaintiff offered testimony tending to prove where Thornton slept, ate, lived,

and worked during the time that it was held that he had abandoned the land. This evidence was objected to, and objection sustained. Whereupon the plaintiff rested his case, and the defendant demurred to the evidence on the ground that the facts proven were not sufficient to establish the averments in the petition, and on the further grounds that the petition did not state facts sufficient to constitute a cause of action. The court sustained this demurrer, and dismissed the petition, and gave judgment for the defendant for costs. A motion for new trial was filed, presented, overruled, and exceptions saved. From this judgment the plaintiff appeals to this court.

The petition did not contain or set out as exhibits the finding of facts or decision of either the register and receiver, commissioner of the general land office, or secretary of the interior. It was not averred in the petition or shown on the trial that the alleged false testimony was the only evidence introduced on the question of Thornton's residence, on the trial before the land office, nor was it averred that the plaintiff had tendered or offered to pay the land office fees for final proof, paid by Peery, nor does he offer to pay same into court.

An examination of the evidence taken in the land office and attached to the petition as an exhibit, discloses the fact that the question of abandonment, as alleged in the contest affidavit, presented a controverted question of fact; that several witnesses, other than the ones whose testimony it is alleged was false, testified concerning the same matters; that the defendant testified as a witness in his own behalf, and did not claim to have resided upon the land continuously after his entry, and his own testimony shows that he only paid short visits to it, at irreg-

ular intervals, and but occasionally remained over night on the land. There is nothing in the petition to advise us what facts the officers of the land department found to be established by this testimony, or what testimony they relied upon in support of such facts.

It is not sufficient that false testimony was given in such cases. Before a court of equity will disturb the finding and judgment of the officers of the land department, it must be made to clearly appear that the false testimony affected their judgment and controlled their action, and that the judgment would have been different had the false testimony not been given. This cannot be shown by alleging bald conclusions. The facts must be specifically pleaded, so that the court can determine from the pleading itself that a different conclusion would have been reached had the alleged false testimony not been introduced.

The allegation in the petition that the testimony given in the contest cause does not prove abandonment goes alone to the weight of the evidence, and cannot be considered by a court of equity. If there is any evidence tending to support the conclusions of the officers of the land department, such conclusions will be final and conclusive, unless reversed on appeal, and courts will not disturb such conclusions. If the petition had contained the averment that there was no evidence tending to support the findings of the officers of the land department, and had exhibited all the evidence taken in the land office as an exemplification of this averment, a different question would be presented. These questions have often been passed upon, and the law settled, by the supreme court of the United States.

In *Vance v. Burbank*, 101 U. S. 514, Mr. Chief Justice Waite said: "The appropriate officers of the land department have been constituted a special tribunal to decide such questions, and their decisions are final to the same extent that those of other judicial or *quasi* judicial tribunals are. It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the successful party, and prevented him from exhibiting his case fully to the department, so that it may properly be said there has never been a decision in a real contest about the subject matter of inquiry. False testimony or forged documents, even, are not enough, if the disputed matter has actually been presented to, or considered by, the appropriate tribunal. The decision of the proper officers of the department is in the nature of a judicial determination of a matter in dispute."

In *Quinby v. Conlan*, 104 U. S. 420, Mr. Justice Field said: "For mere errors of judgment as to the weight of evidence on these subjects by any of the subordinate officers, the only remedy is by an appeal to his superior of the department. The courts cannot exercise any direct appellate jurisdiction over the rulings of those officers, or of their superiors in the department, in such matters, nor can they reverse or correct them in a collateral proceeding between private parties. In this case the allegation that false and fraudulent representations as to the settlement of the plaintiff were made to the officers of the land department is negatived by the finding of the court. It would lead to endless litigation, and be fruitful of evil, if a supervisory power were vested in the courts over the action of the numerous officers of the

land department, on mere questions of fact presented for their determination. It is only when those officers have misconstrued the law applicable to the case as established before the department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentation and fraud have been practiced, necessarily affecting their judgment, that the courts can, in a proper proceeding, interfere, and refuse to give effect to the action  On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled. And we may also add, in this connection, that the misconstruction of the law by the officers of the department which will authorize the interference of the court must be clearly manifest, and not alleged upon a possible finding of the facts, from the evidence, different from that reached by them; and, where fraud and misrepresentations are relied upon as grounds of interference by the court, they should be stated with such fullness and particularity as to show that they must necessarily have affected the action of the officers of the department.    Mere general allegations of fraud and misrepresentations will not suffice."

Again in *Bohall v. Dilla*, 114 U. S. 47, 5 Sup. Ct. 782, Mr. Justice Field said: "To charge the holder of the legal title to lands under a patent of the United States as a trustee of another, and to compel him to transfer the title, the claimant must present such a case as will show that he himself was entitled to the patent from the government, and that, in consequence of erroneous rulings of the officers of the land department, upon the law applicable to the facts found, it was refused to him.

It is not sufficient to show that there may have been error in adjudging the title, to the patentee. It must appear that by the law, properly administered, the title should have been awarded to the claimant."

In *Lee v. Johnson*, 116 U. S. 48, 6 Sup. Ct. 249, the court says: "The court does not interfere with the title of a patentee, when the alleged mistake relates to a matter of fact, concerning which those officers may have drawn wrong conclusions from the testimony. A judicial inquiry as to the correctness of such conclusions would encroach upon a jurisdiction which congress has devolved exclusively upon the department. It is only when fraud and imposition have prevented the unsuccessful party in a contest from fully presenting his case, or the officers from fully considering it, that a court will look into the evidence. It is not enough, however, that fraud and imposition have been practiced upon the department, or that false testimony or fraudulent documents have been presented. It must appear that they affected its determination, which otherwise would have been in favor of the plaintiff. He must in all cases show that, but for the error or fraud or imposition of which he complains, he would be entitled to the patent. It is not enough to show that it should not have been issued to the patentee. It is for the party whose rights are alleged to have been disregarded that relief is sought, not for the government, which can file its own bill, when it desires the cancellation of a patent unadvisedly or wrongfully issued."

Again, in the same opinion, it is said: "Without going into any detail of the evidence presented to the commissioner and secretary of the interior, but taking the general statement of its nature which we have given,

—29

it is clear that their attention was drawn by it to the character of the settlement of Johnson, and that they considered whether his entry was made to acquire a home for himself, or for his son-in-law; whether his residence had been sufficiently personal and continuous to save and perfect any right, if in fact he had ever initiated any; and whether or not he had abandoned the land. The findings of the secretary upon any of these maters * * of fact cognizable by it has been expressly affirmed. * * To allow the conclusions of the secretary of the interior on questions of fact to be subjected to review by the courts in cases of this kind would open the doors to endless litigation."

It is also well settled that a court will not set aside a judgment because it was founded on perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. (*U. S. v. Throckmorton,* 98 U. S. 61.)

A court of equity will not inquire into a charge of misapplication of the law to the facts in issue in a land case unless the findings of fact which were made by the department are set out in full and made part of the pleading of the party complaining. (*Cummings v. McDermid,* 4 Okl. 272, 44 Pac. 276; *King v. Thompson,* 3 Okl. 644, 39 Pac. 466; *Myers v. Berry,* 3 Okl. 612, 41 Pac. 580.)

It is clear that the failure to allege that there was no other evidence on the question of settlement and residence except that which was alleged to be false, or that there was no other evidence in the cause tending to support the conclusion of the officers of the land department in the contest case, rendered the petition insufficient to warrant a judgment holding the action of the land de-

partment illegal and void. And a failure to set out and plead the findings of fact made by the land officers in the contest case renders the petition so defective as to prevent the court from determining whether there was any misapplication of the law. Pleading all the evidence does not supply this lack of material averments, but, on the contrary, is an aid to the demurrer in this cause, as it appears that there was abundant evidence other than the alleged false testimony on which a finding might have been based.

There was no error in sustaining the demurrer to the evidence. The only evidence introduced was that taken before the land office. This was only competent for the purpose of showing what the two witnesses, who it was alleged had testified falsely, had testified to in the land contest case, in order to lay the foundation for proving its falsity. This evidence did not prove any of the averments of the petition, except that the two witnesses whose testimony was attacked had testified as alleged. It did not establish any other independent averments. After the court excluded the evidence offered for the purpose of showing where the plaintiff had made his home during the time embraced in the period covering the alleged abandonment, the plaintiff rested his case. He did not offer any evidence to prove his qualifications to acquire title to public land; that he had not acquired title to other public lands after the cancellation of his homestead entry; that he had continued to reside upon, cultivate, and improve said land at all times up to the date he was removed by order of the court in the mandatory injunction proceedings; that he had tendered or was ready to pay the land office fees for making final proof,

or that the injunction proceedings, by which he was re-moved from the land, continued in full force and effect to time' of trial—none of which facts were admitted by defendant's answer. If he had been permitted to intro-duce all the evidence offered by him, it would not have been sufficient to entitle him to the relief asked for. Errors in rejecting evidence will not reverse a judgment where it appears that, if all the evidence offered by the appellant had been received, the judgment must have been the same. (*Gready v. Ready,* 40 Wis. 478; *Marrinan & Bro. v. Knight,* this volume, p. 419, 54 Pac. 656.)

We hold that the district court committed no error in sustaining the demurrer to the evidence, and in holding that the petition does not state facts sufficient to constit-ute a cause of action. Judgment affirmed, at costs of ap-pellant.

All of the Justices concurring.